[No. S143491. Nov. 26, 2007.]

TARIQ CHAMBERS, Petitioner, v.
APPELLATE DIVISION OF THE SUPERIOR COURT OF SAN DIEGO
COUNTY, Respondent;
SAN DIEGO POLICE DEPARTMENT, Real Party in Interest.

## COUNSEL

Steven J. Carroll, Public Defender, Kristin Scogin and Matthew Braner, Deputy Public Defenders, for Petitioner.

Michael P. Judge, Public Defender (Los Angeles), Albert J. Menaster and Mark Harvis, Deputy Public Defenders, for Los Angeles County Public Defender as Amicus Curiae on behalf of Petitioner.

Mary Greenwood, Public Defender (Santa Clara) and Kelley Paul Kulick, Deputy Public Defender, for California Public Defenders Association and Public Defender of Santa Clara County as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Michael J. Aguirre, City Attorney, and David M. Stotland, Deputy City Attorney, for Real Party in Interest.

Dennis Barlow, City Attorney (Burbank) and Juli C. Scott, Chief Assistant City Attorney, for League of California Cities as Amicus Curiae on behalf of Real Party in Interest.

## OPINION

**CORRIGAN, J.**—Here we consider whether derivative information, developed by independent investigation after *Pitchess*[1] disclosure in an earlier case, is subject to a protective order under Evidence Code[2] section 1045,[3]

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*).

[2] All further undesignated statutory references are to this code.

[3] Section 1045 provides:

"(a) Nothing in this article shall be construed to affect the right of access to records of complaints, or investigations of complaints, or discipline imposed as a result of those

subdivision (e) (section 1045(e)). We hold that derivative information is not generally subject to the statutorily required protective order when a subsequent defendant files his or her own *Pitchess* motion and receives the name of the same complainant to which the derivative information pertains. We therefore affirm the Court of Appeal's judgment.

## I. Factual and Procedural Background

Defendant Tariq Chambers was charged with one count of resisting, delaying, or obstructing a peace officer. (Pen. Code, § 148, subd. (a)(1).) According to the police report, on July 29, 2004, Officer E. and his partner responded to a report of domestic violence at Chambers's residence. Chambers became belligerent and rushed toward Officer E. three times. Officer E. used pepper spray to protect himself.

In January 2005, Chambers filed a *Pitchess* motion, seeking information in Officer E.'s personnel file regarding "excessive force, aggressive conduct, unnecessary violence, unnecessary force, false arrest or detention, false statements in reports, false claims of probable cause or reasonable suspicion or any other evidence of, or complaints of dishonesty, by Officer [E]." Defense counsel filed a supporting declaration asserting that Officer E. overreacted and used excessive force by spraying Chambers with pepper spray. Chambers denied rushing at or physically threatening the officers, and

investigations, concerning an event or transaction in which the peace officer or custodial officer, as defined in Section 831.5 of the Penal Code, participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties, provided that information is relevant to the subject matter involved in the pending litigation.

"(b) In determining relevance, the court shall examine the information in chambers in conformity with Section 915, and shall exclude from disclosure:

"(1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought.

"(2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code.

"(3) Facts sought to be disclosed that are so remote as to make disclosure of little or no practical benefit.

"(c) In determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records.

"(d) Upon motion seasonably made by the governmental agency which has custody or control of the records to be examined or by the officer whose records are sought, and upon good cause showing the necessity thereof, the court may make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression.

"(e) The court shall, in any case or proceeding permitting the disclosure or discovery of any peace or custodial officer records requested pursuant to Section 1043, order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law."

asserted Officer E. lied when he reported that conduct. After Chambers had been disabled by the spray, both officers allegedly had their guns drawn and threatened to shoot him. Judge Willis found good cause to inspect Officer E.'s personnel file, but found no relevant information to disclose.

In August 2005, Chambers filed a supplemental *Pitchess* motion through his public defender, Kristin Scogin. After being assigned to Chambers's case, Scogin was assigned to take over a case involving a Ms. Washington (*People v. Washington* (Super. Ct. San Diego County, No. M947152) (*Washington*)). As a result, Scogin learned *Pitchess* information about Officer E. that was ordered disclosed in the *Washington* case, along with derivative information that had been independently developed.

The trial court in the *Washington* case had imposed a protective order limiting "[u]se of the information ordered disclosed from the officer's personnel files" to "the defense of this criminal matter."[4] On Chambers's behalf, and as relevant here, Scogin asked the court to release the name of one of the complainants that had been disclosed to Washington. She also asked permission to use, on behalf of Chambers, the derivative information independently developed after the complainant had been disclosed to Washington. In a sealed declaration, Scogin described that derivative information, but did not refer to the complainant by name.

The city attorney opposed the supplemental motion, and Chambers ultimately sought reconsideration of his original *Pitchess* motion. The trial court concluded the defense was "precluded from using information developed in other *Pitchess* motions," but reexamined the personnel file "to make sure that [it] did not miss anything." The trial court again found no relevant information regarding other complainants.

Defendant's petition for writ of mandate to the superior court appellate division was denied, but he obtained writ relief from the Court of Appeal. The Court of Appeal held that information regarding the complainant disclosed in the *Washington* case should be disclosed by the trial court to Chambers subject to an appropriate protective order under section 1045(e). It further held that because it was ordering disclosure of the complainant's identity to Chambers, the deputy public defender would not violate the section 1045(e) protective order in the *Washington* case if she used the derivative information acquired during investigation of the *Washington* matter in the *Chambers* case.

We granted the San Diego Police Department's petition for review.

---

[4] The protective order in the *Washington* case was not included in the record here. We have obtained the record in *Washington*, and take judicial notice of the order on our own motion.

## II. Discussion

### A. Background

In *Pitchess, supra,* 11 Cal.3d 531, "we held that a criminal defendant has a limited right to discovery of peace officer personnel records in order to ensure 'a fair trial and an intelligent defense in light of all relevant and reasonably accessible information.' "[5] (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1037, fn. 3 [130 Cal.Rptr.2d 672, 63 P.3d 228] (*Alford*).) "In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as '*Pitchess* motions' . . . through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045."[6] (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81 [260 Cal.Rptr. 520, 776 P.2d 222], citation & fns. omitted (*Santa Cruz*).)

A *Pitchess* motion must describe "the type of records or information sought" and include "[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records." (§ 1043, subd. (b)(2), (3).) If the defendant establishes good cause, the court must review the records in camera to determine what, if any, information should be disclosed. (§ 1045, subd. (b); *People v. Mooc* (2001) 26 Cal.4th 1216, 1226 [114 Cal.Rptr.2d 482, 36 P.3d 21].) In providing for in camera review, "the Legislature balanced the accused's need for disclosure of relevant information with the law enforcement officer's legitimate expectation of privacy in his or her personnel records." (*Mooc,* at p. 1220.)

" 'As a further safeguard,' " an order of disclosure ordinarily involves revelation of only the " 'name, address and phone number of any prior complainants and witnesses and the dates of the incidents in question.' "[7] (*Alford, supra,* 29 Cal.4th at p. 1039.) Section 1045(e) *requires* the court to

---

[5] Peace officer personnel records are defined as "any file maintained under that individual's name by his or her employing agency and containing records relating to" certain categories, including "[c]omplaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties." (Pen. Code, § 832.8, subd. (e).)

[6] Penal Code section 832.7, subdivision (a) provides in part: "Peace officer or custodial officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code."

[7] We subsequently refer to these data as "complainant information." Under certain circumstances, courts have disclosed the actual complaint or statement that is contained in the

impose a protective order providing that the "records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law."[8] (§ 1045(e).)

■ The "relatively low threshold for discovery embodied in section 1043 is offset, in turn, by section 1045's protective provisions which: (1) explicitly 'exclude from disclosure' certain enumerated categories of information (§ 1045, subd. (b)); (2) establish a procedure for in camera inspection by the court prior to any disclosure (§ 1045, subd. (b)); and (3) issue a forceful directive to the courts to consider the privacy interests of the officers whose records are sought and take whatever steps 'justice requires' to protect the officers from 'unnecessary annoyance, embarrassment or oppression.' (§ 1045, subds. (c), (d) & (e).)" (*Santa Cruz, supra,* 49 Cal.3d at pp. 83–84.)

### B. *Derivative Information*

We consider a situation in which defense counsel has obtained complainant information through the *Pitchess* process, and defense investigators have interviewed that complainant. If that counsel later represents another defendant and, pursuant to *Pitchess,* discovers the same complainant information, may the lawyer refer to the derivative information obtained during the earlier followup investigation without violating the section 1045(e) protective order?

■ As noted, section 1045(e) provides that when a court permits disclosure pursuant to section 1043, it must also "order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law." (§ 1045(e).) In *Alford, supra,* 29 Cal.4th 1033, we held the language " 'a court proceeding pursuant to applicable law' " refers to the statutory *Pitchess* scheme, and restricts "use of the *disclosed information* to the proceeding in which it was sought." (*Id.* at pp. 1040, 1042, italics added.) This "interpretation of section 1045(e) harmonizes the entire statutory scheme and retains its effectiveness by furthering the legitimate interests of both the defendant and the peace officer." (*Id.* at pp. 1042–1043.)

In reaching our conclusion, we rejected Alford's argument that an order limiting use of *Pitchess* material to the case in which it is sought "undermines fair representation and encourages inefficiency and duplication of effort, in that members of the public defender's office must feign ignorance of *Pitchess* information personally known to them and instead file repeated *Pitchess*

personnel file. (*Pitchess, supra,* 11 Cal.3d at p. 537; *Alvarez v. Superior Court* (2004) 117 Cal.App.4th 1107, 1112–1113 [12 Cal.Rptr.3d 252].) We do not address that situation here.

[8] We note that under a separate subdivision (§ 1045, subd. (d)), the court *may* issue additional orders if it concludes upon a specific showing of good cause that further protection is needed.

motions in subsequent cases, not 'using' previously disclosed information in making showings of good cause for disclosure." (*Alford, supra,* 29 Cal.4th at p. 1043.) Alford identified no "impediment to the public defender's ability to represent him," and the specific *Pitchess* judicial obligation arguably superseded a public defender's office rules concerning "attribution to all deputies of knowledge gained by any one of them." (*Ibid.,* italics omitted.)

*Alford* involved "the information disclosed pursuant to a *Pitchess* motion." (*Alford, supra,* 29 Cal.4th at p. 1037, fn. 2.) We noted that the "parties have not briefed, and we express no views concerning, the treatment of information developed as a result of the receipt of information disclosed pursuant to a *Pitchess* motion." (*Ibid.*; see also *id.* at p. 1063 (conc. & dis. opn. of Moreno, J.).) That issue is presented here.

■ Section 1045(e) refers to "records disclosed or discovered." We conclude that this language means the personnel file information that is ordered disclosed by the trial court. As noted, this information is generally limited to the name, address and telephone number of a prior complainant, other witnesses, and the date of the incident. In that general situation, the statutory description of "records disclosed or discovered" does not extend to information subsequently developed. However, derivative information could reveal that a complaint had been made against a particular officer and the name of the complainant. As a result, it could relate back to information that *was* disclosed and fall under the protective order. In this situation, however, there is no danger of an unjustified disclosure, as Chambers will receive the name of the officer through his own *Pitchess* motion.

■ We adopt the rule formulated by the Court of Appeal for this narrow factual situation. When complainant information has been ordered disclosed to counsel who, when later representing a different defendant, succeeds under *Pitchess* in discovering the same complainant information relating to the same officer, counsel may then refer to the derivative information uncovered as part of the earlier followup investigation.

Application of the rule is illustrated by the following scenario: Counsel for Defendant A files a *Pitchess* motion and receives complainant information. An investigator then interviews that complainant, and perhaps other witnesses, thus developing derivative information.

The same attorney later represents Defendant B. Even though the same law enforcement officer may be involved in Defendant B's case, counsel cannot simply use the derivative information developed in Defendant A's case. Doing so would reveal complainant information from the officer's record that is subject to the section 1045(e) protective order under which the disclosure was made in Defendant A's case.

However, if counsel files a new *Pitchess* motion in Defendant B's case, seeking information about the officer, and then receives the same complainant's name as he or she did in Defendant A's case, the attorney is free to use derivative information previously garnered during the followup investigation.

The section 1045(e) protective order is designed to ensure that disclosure of confidential information is limited to the proceeding in which the disclosure is ordered. Once a subsequent defendant obtains that same information under a valid *Pitchess* order, there is little justification for precluding review of derivative information. As the Court of Appeal observed, the second "litigant obtains nothing beyond that which the *Pitchess* statutory scheme contemplates he is able to obtain," and counsel for the first *Pitchess* litigant "has not permitted the information to be used for any court proceeding in which a *Pitchess* relevance determination has not been made."

This approach is consistent with the purpose of the *Pitchess* scheme to balance the police officer's privacy interest in his or her personnel records with the criminal defendant's interest in obtaining all pertinent information. As the Court of Appeal observed, the "defendant remains able to prepare a defense, and the officer's privacy interest in the data contained in his personnel file is not affected beyond that which occurred when *Pitchess* disclosure was ordered."

 The San Diego Police Department relies on a line of cases holding that other discovery methods cannot substitute for compliance with the *Pitchess* statutory scheme. Here, however, Chambers followed the *Pitchess* process, and will receive the complainant information that was also released in the *Washington* case. Our resolution requires both defendants to bring *Pitchess* motions, and for a trial court to find good cause and relevance in each case.

## III. Disposition

The Court of Appeal's judgment is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**BAXTER, J.,** Concurring.—I concur in the majority's narrow holding that "[w]hen complainant information has been ordered disclosed to counsel who, when later representing a different defendant, succeeds under *Pitchess* [*v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]] in discovering the same complainant information relating to the same officer,

counsel may *then* refer to the derivative information uncovered as part of the earlier followup investigation." (Maj. opn., *ante*, at p. 681, italics added.) *After* counsel has won a second *Pitchess* disclosure, involving the same officer and the same complainant information, no purpose of the statutes and protective orders that safeguard confidential police officer personnel records is served by requiring counsel to perform a meaningless duplicate investigation before using, at trial, derivative information counsel already possesses.

However, I do not interpret the majority's opinion, or its judgment, to imply that counsel may employ information learned as a direct result of the first *Pitchess* disclosure to *support a later request* for *Pitchess* disclosure in a different case. The statutory scheme, and the protective orders issued thereunder, restrict "*use* of the . . . information [disclosed through a *Pitchess* motion] *to the proceeding in which it was sought.*" (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1042 [130 Cal.Rptr.2d 672, 63 P.3d 228], italics added (*Alford*).) In this context, I see no reason to distinguish between direct and derivative "use." Otherwise counsel could win *Pitchess* disclosure against an officer in one case, obtain derivative information as a result, then invade the hapless officer's confidential file again and again, in circumvention of *Alford*, simply by bringing an infinite number of subsequent *Pitchess* motions, using the previously obtained information to demonstrate the need for new disclosure.

As *Alford* explained, the statutes' "careful[] balanc[ing] [of] peace officers' privacy interests in their personnel records against defendants' rights of access to information relevant to their defense" requires that *Pitchess* disclosure be ordered "only on a showing of materiality *to a particular case.*" (*Alford, supra*, 29 Cal.4th at p. 1042, italics added.) To establish such materiality, and obtain in camera inspection of the officer's files, the defendant need only present a "plausible factual foundation" for a claim that, *in his or her case*, the officer lied or committed other relevant misconduct. (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1025 [29 Cal.Rptr.3d 2, 112 P.3d 2].) The in camera determination whether the files contain relevant and discloseable information should similarly be guided by the circumstances of the particular case in which disclosure is sought. Accordingly, the statutory balance would be upset by allowing counsel to "pile on" against the officer by using, in later *Pitchess* proceedings, information obtained as the result of an earlier *Pitchess* disclosure.

On the assumption that the majority opinion and judgment are thus circumscribed, I concur in both.

**MORENO, J.,** Concurring.—I fully concur with the majority's holding that derivative information developed through investigation after *Pitchess* disclosure (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*)) in an earlier case is not generally subject to a protective order under Evidence Code, section 1045, subdivision (e),[1] when a subsequent defendant files a *Pitchess* motion and receives the name of the same complainant to which the derivative information pertains. (Maj. opn., *ante*, at pp. 676–677.) I write separately to express my continuing disagreement with the notion that section 1045, subdivision (e), restricts " 'use of the *disclosed information* to the proceeding in which it was sought.' " (Maj. opn., *ante*, at p. 680, citing *Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1042 [130 Cal.Rptr.2d 672, 63 P.3d 228] (*Alford*).)

As I explained in my concurring and dissenting opinion in *Alford*, *supra*, 29 Cal.4th at pages 1057–1063, such a conclusion is neither prescribed by the plain language of section 1045, subdivision (e), nor is it supported by the legislative history. Both support the conclusion that *Pitchess* disclosure "may be used in *any* court proceeding pursuant to applicable law." (*Alford*, *supra*, 29 Cal.4th at p. 1059 (conc. & dis. opn. of Moreno, J.).)

Nor was the court's conclusion in *Alford* necessitated by the concededly legitimate privacy interests of law enforcement. The *Pitchess* process contains adequate safeguards if disclosed records were to be admitted in a subsequent proceeding. (*Alford*, *supra*, 29 Cal.4th at p. 1061 (conc. & dis. opn. of Moreno, J.).) As I noted in *Alford*, the screening process preceding the initial disclosure and the requirement that admission in a subsequent proceeding comport with various Evidence Code statutes (e.g., §§ 210 [relevance], 352 [prejudice]) sufficiently protect officers' privacy. (*Alford*, *supra*, 29 Cal.4th at p. 1061 (conc. & dis. opn. of Moreno, J.).) Additionally, a trial court in a subsequent proceeding could order any records filed under seal pending its ruling on the records' admissibility. (§ 1045, subd. (d).)

On the other hand, the court's interpretation in *Alford* "forces defense attorneys, city attorneys and trial judges to 'reinvent the wheel' with each 'new' *Pitchess* request regarding the same peace officer—defense attorneys must write motions, city attorneys must scour records, and judges must conduct in-chambers hearings, simply to make the same *Pitchess* determination over and over again. . . . Repetitive *Pitchess* motions are an unnecessary and enormous waste of scant judicial and governmental resources." (*Alford*, *supra*, 29 Cal.4th at pp. 1061–1062 (conc. & dis. opn. of Moreno, J.).)

---

[1] All further unlabeled statutory references are to the Evidence Code.

Accordingly, I remain of the opinion that section 1045, subdivision (e) allows defendants to use *Pitchess* discovery in any "court proceeding pursuant to applicable law."